# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN R. WURST, JR., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of the Social ) <br> Security Administration,[1] ) <br> ) <br> Defendant. ) | Case No. CIV-12-258-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant Steven R. Wurst, Jr. requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

1

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is deemed disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on September 28, 1972, and was thirty-eight years old at the time of the administrative hearing (Tr. 28, 105). He has a high school education and completed one year of college (Tr. 28). The claimant has past relevant work as a water truck driver and bar manager (Tr. 21). The claimant alleges that he has been unable to work since December 15, 2009 because of lower back and right shoulder pain, obesity, high blood pressure, and depression (Tr. 121).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on December 15, 2009 (Tr. 105). The Commissioner denied his application. ALJ Osly F. Deramus conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated April 14, 2011. (Tr.

10-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), limited to no crouching, crawling, or kneeling; only occasional stooping and climbing stairs; and avoidance of extreme temperature changes, heights, and dangerous moving machinery. In addition, the ALJ found that the claimant was unable to operate a motor vehicle. Due to psychological impairments, the ALJ also found that the claimant would be limited to simple, routine tasks and no contact with the general public (Tr. 15). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was other work he could perform, *i. e.*, call out operator (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze his credibility; (ii) by failing to properly analyze his RFC at step four; and, (iii) by failing to properly analyze the medical opinion of his treating physician, Dr. Ronald Myers, M.D. None of these contentions are persuasive, and the decision of the Commissioner should therefore be affirmed.

4

The claimant began receiving treatment at the Wellness Clinic of Roland on September 9, 2009 (Tr. 285). At that clinic, the claimant was treated by both Dr. George Howell, M.D. and Dr. Ronald Myers, M.D. The claimant was seen on a monthly basis, and received pain medications including oxycodone and methadone (Tr. 268). The goal written on several office notes was to "[c]ontrol [claimant's] pain to a 6 or lower and improve daily activities of life and functionality" (Tr. 262, 264, 266, 268). Upon examination on several occasions, Dr. Howell noted that the claimant had spasms of the low back, tenderness, and positive bilateral straight leg raising tests, with the left side being worse than the right (Tr. 262, 264, 266, 268).

On January 22, 2010, Dr. Myers completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) in which he opined that the claimant was capable of the following: i) sitting one hour at a time for a total of four hours in a regular workday; ii) standing for 30 minutes at a time for a total of two hours in a regular workday; and iii) walking for one hour at a time for a total of two hours in a regular workday (Tr. 259). Dr. Myers also opined that the claimant was unable to bend, squat, crawl, climb, stoop, crouch, or kneel, but that he was capable of reaching above his head at least occasionally (Tr. 259). With regard to environmental limitations, Dr. Myers found that the claimant could occasionally be exposed to unprotected heights, moving machinery, marked temperature changes, driving automotive equipment and could frequently be exposed to dust, fumes, and gases and noise (Tr. 260). Dr. Myers also found the following: i) that claimant would need to take unscheduled breaks during an

eight-hour shift; ii) that claimant would be absent from work more than four days per month due to his physical impairments; and iii) that claimant would need to elevate his feet periodically during the day (Tr. 260).

The claimant testified that he weighed 410 pounds and had gained 60-70 pounds during the preceding year (Tr. 30). He stated that because of his medications, he rarely drives as he does not feel safe (Tr. 31). The claimant testified that he has no money for treatment, and his parents pay for his living expenses and are helping him pay for his monthly pharmacy bill (Tr. 34). He reported that his back pain radiates into his legs and feet, resulting in a throbbing, burning sensation (Tr. 35). He testified that he frequently needs to change positions because of his back and that he does not sleep at night (Tr. 36). The claimant testified that he has difficulty concentrating and finds it difficult to follow storylines on television (Tr. 37). Finally, the claimant testified that he must elevate his legs throughout the day and that he cannot get out of the bathtub on his own (Tr. 39-40).

The claimant contends, *inter alia*, that the ALJ failed to properly analyzed the opinion of his treating physician Dr. Myers. Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.*

at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

Though the ALJ did not explicitly state what weight he was giving to the opinion of the claimant's treating physician Dr. Myers, it is clear that the ALJ declined to give it controlling weight, noting: (i) the claimant's treatment came primarily from Dr. Myers's partner, Dr. Howell; (ii) the claimant received routine care when treated by either doctor; (iii) neither physician ordered diagnostic testing or referred the claimant to specialists; and, (iv) Dr. Myers's opinions are not supported by either his treatment notes, or the medical evidence as a whole (Tr. 19). *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.[3] The ALJ clearly gave little if any weight to the opinions

---

[3] The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of

of Dr. Myers, but he provided legitimate reasons for doing so. *Watkins,* 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."), *citing Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996), *quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). The ALJ's analysis of Dr. Myers' opinions was therefore not clearly erroneous.

The claimant also contends that the ALJ erred in analyzing his own credibility, specifically arguing that the ALJ attributed too much weight to the fact that the claimant worked despite his impairments in 2009 as a truck driver and received unemployment insurance through June 2010. A credibility determination is entitled to deference unless the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

---

examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].

The ALJ found "the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 17). The Court has disapproved this language in the past, as it suggests an improper approach to the process, *i. e.*, assignment of an RFC and subsequent measurement of claimant credibility against the RFC, rather than initial evaluation of the claimant's credibility (along with the other evidence in the case) and subsequent formulation of an appropriate RFC based thereon. *See, e. g., McFerran v. Astrue,* 2011 WL 3648222, *2-*3 (10th Cir. Aug. 19, 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' . . . The ALJ's errors in the credibility assessment necessarily affect the RFC determination."), [unpublished opinion], *quoting Poppa v. Astrue,* 569 F.3d 1167, 1169 (10th Cir. 2009). But the ALJ in this case noted the relevant factors in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and cited evidence in support of his reasons for finding that the claimant's subjective complaints were not credible. For example, the ALJ mentioned: (i) the claimant's back injuries were documented in 1994 and 2001, and the most recent MRI from 2004 was unchanged from the 2001 MRI; (ii) the claimant's treatment was conservative, consisting of pain medication, epidural steroid injections, and physical therapy, before he returned to work; (iii) the claimant continued working until March 2009 driving an oilfield water truck; (iv) the claimant's back pain

improved after he stopped driving a truck; (v) the claimant's treatment was routine, consisting of pain medications; and (vi) the claimant was never referred to any specialists to determine the source of his back pain (Tr. 17-21). Thus, the ALJ sufficiently linked his credibility determination to the evidence as required by *Kepler*, and he provided specific reasons for the determination in accordance with *Hardman*. His analysis of the claimant's credibility determination is therefore not clearly erroneous.

Finally, the claimant contends that the ALJ erred in analyzing his RFC by failing to include: (i) a sit/stand option; (ii) the need to elevate his legs; and (iii) the side effects of his pain medications. The claimant also contends that the ALJ erred by finding that he could occasionally stoop and climb stairs. Thus, the claimant essentially argues that the ALJ erred by failing to incorporate in his RFC the limitations imposed by Dr. Myers and the claimant's own subjective complaints. But as discussed above, the ALJ assigned little weight to the opinions expressed by Dr. Myers in the medical source statement, so he was under no obligation to include any of them in the RFC, *see, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.") [unpublished opinion]. The ALJ was likewise free to leave out any restrictions based upon the claimant's testimony, because as discussed above he performed a proper credibility analysis and found the claimant's subjective complaints unpersuasive.

In summary, the undersigned Magistrate Judge finds the claimant's contentions of error to be unpersuasive. The decision of the Commissioner should therefore be affirmed.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the Court AFFIRM the decision of the Commissioner of the Social Security Administration. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma